# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LATROY DIGGS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-97** |
| **NELSON COLEMAN CORR. CTR., ET AL.** | **SECTION "J"(3)** |

## REPORT AND RECOMMENDATION

Plaintiff, Latroy Diggs, a state prisoner, filed this civil action pursuant to 42 U.S.C. § 1983. He named as defendants the Nelson Coleman Correctional Center, Warden John Nowak, and Sheriff Greg Champagne.

In the complaint, plaintiff states his claims as follows:

Defendants above in violation of Prisoner Due process procedural, Civil Rights. (1) Prisoners are denied Administrative Remedy upon request unless they say reason for. (2) Drinking Water is unsanitary kept and prisoners forced to drink out same cooler that prisoners stick there hands for ice! (3) The prison is charging for haircuts and the barber isn't a license professional. Plus, Inmates only get a cut on certain week of the month. (4) 52 prisoners with Top and bottom bunks is a hazard and an Accident Awaiting. (5) Pre-Trial, sentenced prisoners and D.O.C. are all together on same dorm, which is unconstitutional. (6) Ventilation is not enough for such a crowded place. (7) Prisoners are Denied proper medical treatment, Due to not having enough money in their Account. Example: A prisoner wanted Dental Service and was told he need to have at least $50 dollars in his prison Account. (8) This state house facility isnt equip for state sentenced prisoners, nor is there enough programs for prisoner Rehabilitative into the Community. (9) Living Quarter is unsanitary, by having to eat so close to the toilet. Emergency to use RestRoom, we all must see, smell and take in such unsanitary Awareness. (10) Prisoners safety is Intentionally put into Danger, by placing Pre-trial on same tier (Dorm). (11) Open

Dorm as B-2 is an open for 52 prisoners with two (2) medium vent and smaller dorms is half of 52 has one vent. The air isnt fresh enough for such overcrowding at.[1]

## I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

---

[1] Rec. Doc. 1, p. 5.

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted), cert. denied, 128 S. Ct. 1230 and 1231 (2008). The United States Supreme Court recently explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[2] the Court nevertheless finds that, for the following reasons, the complaint must be dismissed as frivolous and for otherwise failing to state a claim on which relief may be granted.

## II. Relief

As a preliminary matter, the Court notes that plaintiff does not specify the relief he is seeking. However, if he is seeking compensatory damages, it appears that such damages would not be available. Federal law provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); see also Herman v. Holiday, 238 F.3d 660, 665-66 (5th Cir. 2001). Plaintiff has not alleged that he suffered a physical injury caused by the various conditions about which he complains. Without such an injury, he would be barred from recovering compensatory damages even if his claims were otherwise actionable.

That said, the Court nevertheless notes that plaintiff's claims also fail for various other reasons, as is explained below in detail.

## III. Defendants

The Court next notes that plaintiff has not properly stated a claim against the named defendants.

---

[2] The court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

A.  Nelson Coleman Correctional Center

Plaintiff has named the Nelson Coleman Correctional Center as a defendant in this lawsuit. However, the correctional center is a building, not a "person" subject to suit under 42 U.S.C. § 1983. Lathers v. Nelson Coleman Correctional Center, Civ. Action No. 07-2891, 2007 WL 1702780, at *2 (E.D. La. June 11, 2007); see also Elsensohn v. Jefferson Parish Correctional Center, Civ. Action No. 09-2759, 2009 WL 5088744, at *2 (E.D. La. Dec. 23, 2009); Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008); Francis v. United States, Civ. Action No. 07-1991, 2007 WL 2332322, at *2 & n.4 (E.D. La. Aug. 13, 2007); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *4 (E.D. La. Aug. 1, 2007); Martinez v. Larpenter, Civ. Action No. 05-874, 2005 WL 3549524, at *5 (E.D. La. Nov. 1, 2005); Cullen v. DuPage County, No. 99-C-1296, 1999 WL 1212570, at *1 (N.D. Ill. Dec. 14, 1999); Whitley v. Westchester County Correctional Facility Administration, No. 99-CIV-0420(SS), 1997 WL 659100, at *7 (S.D.N.Y. Oct. 22, 1997); Powell v. Cook County Jail, 814 F.Supp. 757, 758 (N.D. Ill. 1993); Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989); Mitchell v. Chester County Farms Prison, 426 F.Supp. 271, 274 (E.D. Pa. 1976).

B.  Warden John Nowak and Sheriff Greg Champagne

Plaintiff also lists Warden Nowak and Sheriff Champagne as defendants in this action. Plaintiff does not indicate whether those defendants are being sued in their official capacities, their individual capacities, or both.  However, regardless of plaintiff's intent, no claim has been properly stated against these defendants in any capacity.

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, official-capacity claims against these defendants would in reality be claims against the local governmental entity they serve, i.e. the St. Charles Parish Sheriff's Office. The United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). Further, "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993); see also Wetzel v. Penzato, Civ. Action No. 09-7211, 2009 WL 5125465, at *3 (E.D. La. Dec. 23, 2009). Rather, he must *identify* the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 Fed. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 Fed. App'x 315, 316 (5th Cir. 2003); Wetzel, 2009 WL 5125465, at *3. In the instant case, plaintiff does not allege that his constitutional rights were violated as a result of a policy or custom, much less identify such a policy or custom, and, therefore, no official-capacity claim has been properly stated against either Warden Nowak or Sheriff Champagne.

To the extent that plaintiff intended to state individual-capacity claims against Warden Nowak and Sheriff Champagne, he has again failed to state a proper claim. "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Here, plaintiff makes no allegations whatsoever against Warden Nowak and Sheriff Champagne. Moreover, these defendants cannot be held vicariously liable for the actions of their subordinates pursuant to 42 U.S.C. § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or *respondeat superior* liability.").

In any event, out of an abundance of caution, the Court will also note that plaintiff's underlying claims are also subject to dismissal for the following reasons even if the claims are considered on the merits.

## IV. Plaintiff's Claims

### A. Administrative Remedy Procedure

In his first claim, plaintiff challenges the adequacy of the jail's administrative remedy procedure. However, even if that procedure is in fact inadequate, plaintiff's claim is foreclosed by Geiger v. Jowers, 404 F.3d 371 (5th Cir. 2005). In Geiger, a prisoner alleged that prison officials failed to properly investigate his grievances complaining about perceived civil rights violations. The

7

United States Fifth Circuit Court of Appeals held that the claim was frivolous because a prisoner has no federally protected liberty interest in having his grievances investigated and resolved to his satisfaction. Id. at 373-74; see also Propes v. Mays, 169 Fed. App'x 183, 184-85 (5th Cir. 2006); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); Tyson v. Tanner, Civ. Action No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); George v. Travis, Civ. Action No. 07-986, 2007 WL 1428744, at *7 (E.D. La. May 10, 2007); Mahogany v. Miller, Civ. Action No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006), appeal dismissed, 252 Fed. App'x 593 (5th Cir. 2007).

### B. Drinking Water

Plaintiff's second claim is that prisoners drink from the same cooler into which they stick their hands for ice. Even if this allegation is true, this situation does not rise to the level of a constitutional violation, especially where no physical harm has resulted. Wilkerson v. Champagne, Civ. Action No. 03-1754, 2003 WL 22872106, at *2 (E.D. La. Nov. 28, 2003).

### C. Haircuts

Plaintiff's third claim is that the prison barber is unlicensed, available only one week per month, and inmates are charged for haircuts. These claims are frivolous.

There is nothing in the federal constitution which requires that prisons use only licensed barbers or have barbers available at all times. Moreover, having a barber available only once per month clearly does not pose an unconstitutional hardship or constitute "cruel and unusual" punishment. See Wilson v. Seiter, 501 U.S. 294, 298 (1991) ("[O]nly those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an

8

Eighth Amendment violation." (citation omitted)). Lastly, there is no constitutional requirement that non-indigent inmates be provided with free haircuts. It is clear that such prisoners may be charged for all manner of services and supplies they receive. See, e.g., Cotner v. Knight, No. 95-6105, 1995 WL 441408, at *13 (10th Cir. July 21, 1995) (non-indigent inmates may be charged for photocopies and postage); Cummings v. Gusman, Civ. Action No. 09-144, 2009 WL 1649737, at *3 n.11 (E.D. La. June 9, 2009) (non-indigent inmates may be charged for hygiene supplies); Coleman v. Whitney, Civil Action No. 06-2285, 2006 WL 3791316, at *2 (E.D. La. Dec. 21, 2006) (non-indigent inmates may be charged for medical services); Hutchinson v. Belt, 957 F.Supp. 97 (W.D. La. 1996) (same).

### D. Bunk Beds

As his fourth claim, plaintiff states: "52 prisoners with Top and bottom bunks is a hazard and an Accident Awaiting." It is unclear whether plaintiff is contending that the inherent danger is posed by the bunk beds or by the number of prisoners in the dormitory setting, but the Court rejects either contention. As an initial matter, the claim is purely conclusory, and conclusory allegations are insufficient to support a civil rights claim. See, e.g., Richards v. Johnson, 115 Fed. App'x 677, 678 (5th Cir. 2004); Arnaud v. Odom, 870 F.2d 304, 307 (5th Cir. 1989). Second, bunk beds are used throughout society, in places ranging from children's bedrooms to military barracks, and there is no evidence that they are inherently dangerous. Likewise, dormitory-style housing of large numbers of prisoners is frequently used in correctional facilities, and, without more, is neither unconstitutional nor inherently dangerous.

E.  Shared Housing

Plaintiff's fifth and tenth claims challenge the prison's practice of confining both convicted inmates and pretrial detainees in the same dorm.  However, it is not *per se* unconstitutional to house pretrial detainees and convicted inmates together.  United States Magistrate Judge Joseph C. Wilkinson, Jr., in an opinion subsequently adopted by United States District Judge Carl Barbier, explained:

> In Jones v. Diamond, 636 F.2d 1364 (5th Cir. 1981), the Fifth Circuit stated that
>
>> [t]he confinement of pretrial detainees *indiscriminately* with convicted persons is unconstitutional unless such a practice is 'reasonably related to the *institution's interest in maintaining jail security*,' or physical facilities do not permit their separation.  *Of course, if a particular pretrial detainee has a long record of prior convictions or is likely to be violent, imposition of greater security measures is warranted ....*  Nonetheless, pretrial detainees have a due process right to be considered individually *to the extent security and space requirements permit*.
>
> Id. at 1374 (quoting Bell v. Wolfish, 441 U.S. 520, 531 (1979)) (additional citations omitted) (emphasis added).  Thus, the Fifth Circuit in Jones recognized that the housing of pretrial detainees with convicted inmates may raise constitutional concerns, but only if their classification together is handled indiscriminately without justification, Pembroke v. Wood County, 981 F.2d 225, 228 (5th Cir. 1993), but it also recognized that some circumstances will permit the housing of pretrial detainees with convicted inmates.
> Significantly, the classification of inmates is an administrative function of the prison.  Jones, 636 F.2d at 1376.  Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation.  Bell, 441 U.S. at 547-48; Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990).  "Inmates have a federal right to due process at prison classification ... only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates."  Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Woods v. Edwards, 51 F.3d 577, 582 (5th Cir. 1995) (citing Hewitt v. Helms, 459 U.S. 460, 469-70 (1983)); Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt, 459 U.S. at 472).  "Classification of inmates in Louisiana is a duty of the [jailer] and an inmate

> has no right to a particular classification under state law." Woods, 51 F.3d at 581-82 (quotation omitted).
>
> Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001); accord Jones v. Roach, No. 05-60530, 2006 WL 2474746, at *1 (5th Cir. Aug. 28, 2006); Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).
>
> The Fifth Circuit's decision in Jones v. Diamond specifically states that limitations on physical facilities might justify housing pretrial detainees with convicted inmates, that pretrial detainees have a right to be considered individually only to the extent that security and space requirements permit and that imposition of greater security measures is warranted if an inmate has a long record of prior convictions or is likely to be violent. Jones, 636 F.2d. at 1374.

McKay v. Terrebonne Parish Sheriff's Office, Civ. Action No. 06-5570, 2007 WL 163059, at *4-5 (E.D. La. Jan. 17, 2007) (footnote omitted); see also Bland v. Terrebonne Parish Criminal Justice Complex, Civ. Action No. 09-4407, 2009 WL 3486449, at *4-5 (E.D. La. Oct. 23, 2009). Here, plaintiff alleges neither that such housing decisions are made indiscriminately without justification nor that the decisions are not reasonably related to the institution's interest in maintaining jail security.

In any event, the general policy favoring such status-based segregation is to protect the pretrial detainees from the perhaps more dangerous convicted inmates, not *vice versa*. Plaintiff is a *convicted inmate*, and he certainly has no colorable claim arising from the fact that he is housed with detainees.

### F. Ventilation

In his sixth and eleventh claims, plaintiff alleges that the dorm ventilation is inadequate. However, such conclusory claims of inadequate ventilation, without more, implicate no federal

11

constitutional right. Johnson v. Texas Board of Criminal Justice, 281 Fed. App'x 319, 321 (5th Cir. 2008); Johnson v. Thaler, No. 99-20222, 1999 WL 1131941, at *1 (5th Cir. Nov. 12, 1999); Parker v. Smith, No. 93-5542, 1994 WL 198944, at *2 (5th Cir. May 6, 1994); Carter v. Strain, Civ. Action No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009).

### G.  Medical Treatment

Plaintiff's seventh claim is that some indigent inmates have been denied medical treatment. It is clear that the constitutional rights of an incarcerated person, whether he is a pretrial detainee or a convicted prisoner, may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999). However, plaintiff does not allege that *he* personally has ever been denied such medical care due to a lack of funds. Although he alleges that another inmate was denied dental care, plaintiff lacks standing to pursue a claim on behalf of another person. Miller v. Conway, 331 Fed. App'x 664, 665 (11th Cir. 2009); Reeves v. Collins, No. 94-10182, 1994 WL 559050, at *2 (5th Cir. Sept. 23, 1994); Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994); Sims v. Kitchen, Civ. Action No. 8:08-cv-1049, 2009 WL 363619, at *4 (D.S.C. Feb. 10, 2009).

### H.  Lack of Programs for Convicted Prisoners

Plaintiff's eighth claim is that the Nelson Coleman Correctional Center, which is a parish jail, does not offer convicted prisoners rehabilitative programs. This claim is frivolous because there is no constitutional right to educational or rehabilitative services or programs in prison. Beck v. Lynaugh, 842 F.2d 759, 762 (5th Cir. 1988); Oatis v. St. Tammany Parish Sheriff's Office, Civ.

12

Action No. 09-6266, 2009 WL 3566120, at *2-3 (E.D. La. Oct. 29, 2009); <u>Oglesby v. Gusman</u>, Civ. Action No. 09-3593, 2009 WL 3254145, at *2 (E.D. La. Oct. 7, 2009); <u>Sampson v. Corrections Corporation of America</u>, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009); <u>Wilbon v. Gusman</u>, Civ. Action No. 05-2443, 2006 WL 2119458, at *2 (E.D. La. July 25, 2006).

## I.  Unsanitary Living Conditions

Plaintiff's ninth claim is that inmates are forced to live in unsanitary conditions, such as having the toilet in the vicinity of the eating area.  Admittedly, there is a point beyond which a prison cell's conditions are so unsanitary as to render them unconstitutional.  <u>See, e.g.</u>, <u>Gates v. Cook</u>, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional).  However, the conditions alleged by plaintiff clearly do not rise to that level.  Simply because his dorm is less sanitary than he would like does not render the conditions unconstitutional.  <u>See</u> <u>Talib v. Gilley</u>, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions."); <u>Wilson v. Lynaugh</u>, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (noting that the Constitution does not protect prisoners from "discomfort and inconvenience" and that prisoners "cannot expect the amenities, conveniences, and services of a good hotel").  Moreover, the fact that inmates must eat in the same vicinity as the toilet may be unpleasant but it is not unconstitutional.  <u>See, e.g.</u>, <u>Hill v. Smith</u>, Civ. Action No. 09-0811, 2010 WL 148272, at *6-7 (W.D. La. Jan. 12, 2010).

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's claims be **DISMISSED WITH PREJUDICE** as frivolous and for otherwise failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[3]

New Orleans, Louisiana, this seventeenth day of February, 2010.

_____
**DANIEL E. KNOWLES, III
UNITED STATES MAGISTRATE JUDGE**

---

[3] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.